IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>DEVIN WARREN SIZEMORE,<br>Defendant. | Case No. 6:21-cr-00138-RAW-1<br><br>**MOTION TO DISMISS<br>COUNT SIX<br>AND BRIEF IN SUPPORT** |

Defendant Devin Sizemore, by and through his assigned counsel, and pursuant to Rule 12 of the Federal Rules of Criminal Procedure, moves this Court for an order dismissing Count Six of the Indictment because the Assimilative Crimes Act ("ACA") does not apply to Indian country and, even if it did, Oklahoma assault and battery of a police officer (21 O.S.A. § 649) it is not imported to Indian country through the ACA.

## Background

Mr. Sizemore is an enrolled member of the Choctaw Nation. This case arises out of his alleged involvement in the tragic death of his young daughter within the historical geographic area of the Choctaw Nation in 2016.

1

A federal grand jury returned a six-count indictment on May 12, 2021. As relevant here, Count Five charges assault resulting in serious bodily injury in Indian country:

> On or about, July 15, 2016, within the Eastern District of Oklahoma, in Indian Country, the defendant, **DEVIN WARREN SIZEMORE**, an Indian, did assault J.S., resulting in serious bodily injury, in violation of Title 18, United States Code, Sections 113(a)(6), 1151 and 1153.

Dtk. No. 20.

Count Six charges assault and battery on a police officer in Indian country:

> On or about, July 15, 2016, within the Eastern District of Oklahoma, in Indian Country, the defendant, **DEVIN WARREN SIZEMORE**, an Indian, did willfully and unlawfully commit assault and battery upon J.S., with the intent to injury J.S., knowing that J.S. was an officer with the Krebs Police Department who was performing the duties of an officer, in violation of Title 18 United States Code, Sections 13, 1151 and 1152 and Title 21, Oklahoma Statutes, Section 649.

Dkt. No. 20.

Both Counts Five and Six seek to criminalize the same acts. Count Five relies exclusively on federal law, whereas Count Six charges Mr. Sizemore with violating a state law.

## Argument

**A.     The ACA does not apply to Indian Country.[1]**

The ACA does not apply to Indian country because Indian country is not one of the "places" described within the ACA. The ACA allows the government to prosecute Native Americas for state law offenses where there is a gap in federal law:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to like punishment.

18 U.S.C. § 13(a).

---

[1] In *Williams v. United States*, 327 U.S. 711, 717-18 (1946), the Supreme Court held that the ACA did not make an Arizona statutory rape statute applicable to Indian country because there already existed a federal statute punishing the specific acts to which the Arizona crime applied. The *Williams* Court, therefore, assumed, without deciding, that the ACA applied in Indian country. *Id*. Lower courts, though apparently not the Tenth Circuit, have relied on *Williams* for the proposition that the ACA applies on Indian territory. *See, e.g.*, *United States v. Marcyes*, 557 F.2d 1361 n.1 (9th Cir. 1977). *But cf. Pueblo of Santa Ana v. Hodel*, 663 F.Supp. 1300, 1309-1310 (D.D.C. 1987) ("[T]he [*Williams*] Court never directly addressed whether the Act should apply to Indian lands.").

Congress defined the "places" to which the ACA applies in 18 U.S.C. § 7. The only places referred to in Section 7 that could possibly include Indian lands – "[a]ny lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof" – does not apply because tribal lands were not "acquired for the use of the United States." 18 U.S.C. § 7(3). Even if this point were ambiguous, that ambiguity should be resolved in favor of promoting tribal independence. *See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143-44 (1980).

**B.  Oklahoma assault and battery of a police officer is not imported to Indian country through the ACA.**

The ACA "assimilates into federal law, and thereby makes applicable on federal enclaves . . ., certain criminal laws of the States in which the enclave is located." *Lewis v. United States*, 523 U.S. 155, 158 (1998). "Put simply, the ACA 'borrow[s] from preexisting state law' to provide more comprehensive criminal laws in federal enclaves." *United States v. Harris*, 10 F.4th. 1005, 1010 (10th Cir. 2021) (quoting *United States v. Christie*, 717 F.3d 1156, 1170 (10th Cir. 2013)). However, "the ACA 'does not adopt state law "where there is no gap to fill."'" *Id.* (quoting

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*, \_\_ U.S. \_\_, 139 S.Ct. 1881, 1891 (2019) (citations omitted).

There is no gap in federal law for 21 O.S.A. § 649 to fill.

As the Tenth Circuit recently noted, "[t]he Supreme Court has . . . outlined a two-step inquiry for courts to utilize in determining when the ACA makes state law applicable to federal enclaves." *Harris*, 10 F.4th at 1010-11. In the first step, a court determines whether a defendant's acts or omissions are punishable "by any enactment of Congress." *Id.* (quoting *Lewis*, 523 U.S. at 164). Because the answer to that question is "yes," this Court proceeds to the next step:

> whether the federal statutes that apply to the "act or omission" preclude application of the state law in question, say, because its application would interfere with the achievement of a federal policy, because the state law would effectively rewrite an offense definition that Congress carefully considered, or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue.

*Id.* (quoting *Lewis*, 523 U.S. at 164). *See also Christie*, 717 F.3d at 1170-71 ("If, for example, it's clear that a federal statute applies to the defendant's conduct and that the assimilation of a state law applying to that same conduct would 'interfere with the achievement of a federal policy' or 'effectively rewrite an offense definition that Congress carefully

5

considered,' or enter a field Congress has expressed an 'intent to occupy,' then the need for dismissing an assimilated crime may be evident even before trial." (citations omitted)).

While analyzing this second step is not always straightforward, the Supreme Court in *Lewis* noted that "it seems fairly obvious that the Act will not apply where both state and federal statutes seek to punish approximately the same wrongful behavior—where, for example, differences among elements of the crimes reflect jurisdictional[ ] or other technical[ ] considerations, or where differences amount only to those of name, definitional language, or punishment." *Lewis*, 523 U.S. 165.

This Court should not assimilate the Oklahoma assault and battery statute. The Tenth Circuit's recent decision in *Harris* explains why. In that case, the government sought to assimilate a Wyoming assault statute that was substantially similar to the federal assault statute proscribed in 18 U.S.C. § 111. The *Harris* Court noted that allowing assimilation would "effectively rewrite an offense definition that Congress carefully considered." *Harris*, 10 F.4th at 1013 (quoting *Lewis*, 523 U.S. at 165). Moreover, "[t]he detailed and comprehensive nature of the federal statute also suggests Congress 'intend[ed] to occupy so much

of a field as would exclude use of the particular state statute at issue.'" *Id.* at 1014 (quoting *Lewis*, U.S. at 164).

Just as in *Harris*, the conduct alleged in Count Six is covered by federal law occupying the field. Both 18 U.S.C. § 113 and 18 U.S.C. § 111 proscribe assaultive conduct. Section 113 covers "eight different assaultive acts, each with a corresponding punishment—from assault with intent to commit murder to simple assault." *Harris*, 10 F.4th at 1014 (citing 18 U.S.C. § 113). 18 U.S.C. § 111 covers a similarly broad range of assaultive conduct against certain officers. Accordingly, there are no gaps in federal assault law for the ACA to fill.

If indeed there are any differences between the relevant federal and Oklahoma provisions, they "amount only to those of name, definitional language, or punishment" as well as jurisdiction. *Lewis*, 523 U.S. at 165, *quoted in Harris*, 10 F.4th at 1014. Ultimately, "[h]ad Mr. [Sizemore] been in [Oklahoma] outside [the Indian territory], a state prosecutor could have successfully brought charges under [21 O.S.A. § 649]. But he was not. Mr. [Sizemore] was on federal territory, and the federal assault statute[s] thoroughly cover his [alleged] conduct." *Harris*, 10 F.4th at 1014 (last alteration added).

7

Any claim that Count Six is necessary to address Officer Suter's status as a state police officer is misplaced for at least two reason. First, there is no gap in § 113 simply because it does not require the alleged victim to be an officer. The statue robustly covers all manner of alleged victims, including officers, though not by name. Second, any claimed gap in coverage concerning federal law is due solely to the fact that Officer Suter was policing outside of his jurisdiction and had no constitutional authority to engage Mr. Sizemore. A state law Oklahoma has no independent authority to enforce against Mr. Sizemore on its own should not be brought through the backdoor of the ACA, especially where provisions of federal law are more than adequate to address the alleged conduct.

Therefore, this Court should dismiss Count Six.

February 21, 2022                                   Respectfully submitted,

*/s/*
Lisa A. Peebles
Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, NY 13202
(315) 701-0080
Lisa_Peebles@fd.org

**Certificate of Electronic Filing and Service**

This is to certify that on this 21st day of February, 2022, I caused the foregoing instrument to be filed with the Clerk of the Court using the ECF System for filing, with electronic service to be made via CM/ECF to Rebecca Dunnan, AUSA, and to all counsel of record. To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.

*/s/*
Lisa A. Peebles
Federal Public Defender