IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>DEVIN WARREN SIZEMORE,<br><br>*Defendant*. | Case No. 6:21-cr-138-RAW-JAR |

### GOVERNMENT'S COMBINED RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE

COMES NOW the United States of America, by and through CHRISTOPHER J. WILSON, United States Attorney for the Eastern District of Oklahoma, DAVID L. JAFFE, Chief, United States Department of Justice Organized Crime and Gang Section, and Trial Attorney, Rebecca R. Dunnan, and respectfully responds to the defendant's eight (8) motions *in limine* filed on February 21, 2022. (Doc. Nos. 50–57). The government respectfully requests that the Court consider this combined response to all of the defendant's separately filed motions *in limine*. In support of this response, the government provides the following:

I.   **PROCEDURAL HISTORY**

On May 12, 2021, a federal grand jury in the Eastern District of Oklahoma – Muskogee Division, issued a six-count indictment against the defendant charging him with Murder in Indian Country, in violation of 18 U.S.C. §§ 1111(a), 1151 and 1153 (Count

1

One), Second Degree Murder in Indian Country, in violation of 18 U.S.C. §§ 1111(a), 1151 and 1153 (Count Two), Voluntary Manslaughter in Indian Country, in violation of 18 U.S.C. §§ 1112(a), 1151, and 1153 (Count Three), Child Abuse in Indian Country, in violation of 18 U.S.C. §§ 1151 and 1153 and 21 Okla. Stat. 843.5(A) (Count Four), Assault Resulting in Serious Bodily Injury in Indian Country, in violation of 18 U.S.C. §§ 113(a)(6), 1151 and 1153 (Count Five), and Assault and Battery on a Police Officer in Indian Country, in violation of 18 U.S.C. §§ 13, 1151 and 1152 and 21 Okla. Stat. 649 (Count Six). (Doc. No. 20). As alleged in the indictment, on or about July 15, 2016, the defendant murdered his two-year old daughter, Emily Sizemore, by drowning her in a pond in Krebs, Oklahoma. *Id*. When apprehended, the defendant resisted arrest and assaulted J.S., a police officer with the Krebs Police Department at the time. *Id*. In a post-*Miranda* statement, the defendant admitted to drowning her.

Prior to the filing of federal charges, the defendant was tried and convicted in Oklahoma state court. Specifically, on October 31, 2018, in the District Court of Pittsburg County, the defendant was convicted of Murder First Degree and Assault and Battery of a Police Officer. (*Oklahoma v. Sizemore*, Case No. CF-2016-593, in the District Court of Pittsburg County). Thereafter, he was sentenced to life without parole for the murder conviction with a five-year sentence for Assault and Battery of a Police Officer. Following the Supreme Court's decision in *McGirt v. Oklahoma*, 591 U.S. __, 140 S.Ct. 2452 (2020), the defendant appealed his conviction. The Oklahoma Court of Criminal Appeals vacated his judgment and sentence and remanded the case to the district court with instructions to dismiss. (*Sizemore v. Oklahoma*, 2021 OK CR 6, Case No. F-2018-1140, Apr. 5, 2021).

On February 21, 2022, the defendant moved *in limine* to preclude certain types of testimony at the trial of the defendant currently scheduled for October 4, 2022, specifically: (1) any and all evidence, arguments, or comments regarding the defendant's prior state case (Doc. No. 50); (2) any and all reference to a hole located in a tack shed as a grave or burial site (Doc. No. 51); (3) the publishing of autopsy photographs (Doc. No. 52); (4) introduction of the Medical Examiner's Autopsy Report (Doc. No. 53); (5) reference to the defendant's insanity notice (Doc. No. 54); (6) reference to descriptions of the defendant's mental state prior to the murder (Doc. No. 55); (7) the use of the word "victim" (Doc. No. 56); and (8) emotional witness reactions (Doc. No. 57).

For the reasons discussed herein, this Court should grant, deny or delay ruling on these motions as described below.

## II. LAW AND ARGUMENT

### A. Fact of Defendant's State Conviction Should Be Precluded Unless He "Opens the Door" – Response to Defendant's First Motion in Limine (Doc. No. 50)

The government agrees that the fact that the defendant was convicted in state court for this murder should be precluded pursuant to Federal Rules of Evidence 401, 402, and 403. However, as worded, the defendant's First Motion in Limine is overly broad. Certainly, there are circumstances where the defendant (either through counsel or testimony) may place the fact of his prior conviction at issue. "It is fundamental that a defendant cannot complain of error which he invited upon himself." *United States v. Cutler*, 948 F.2d 691, 697 (10th Cir. 1991); *see also United States v. Chavez*, 229 F.3d 946, 952 (10th Cir. 2000) (reviewing the widely recognized circumstances under which a party

3

may "'open[] the door' to admission of evidence on that same subject by the opposing party."). Outside of warning the defendant that he may "open the door" to such testimony, the government respectfully concedes the Court should grant this motion.

### B. Descriptors for the Hole Found at the Crime Scene are Proper – Response to Defendant's Second Motion in Limine (Doc. No. 51)

The defendant seeks to prohibit government witnesses from using certain words to describe certain evidence. Specifically, the defendant does not want witnesses to describe a hole in the ground found on the premises where Emily Sizemore was murdered as a "grave, burial site, or other related term." (Doc. No. 51 at p. 1). However, such testimony is proper lay opinion testimony pursuant to Federal Rule of Evidence 701.

Federal Rule of Evidence 701 allows a witness to testify to a non-expert opinion so long as that opinion is (1) "rationally based on the witness's perception," (2) "helpful to clearly understanding the witness's testimony or determining a fact in issue," and (3) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Examples of lay opinion testimony under Rule 701 are "the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." *James River Ins. Co. v. Rapid Funding,* LLC, 658 F.3d 1207, 1214 (10th Cir. 2011) (quoting *Asplundh Mfg. Div. v. Benton Harbor Eng.*, 57 F.3d 1190, 1196 (3d Cir. 1995) (internal quotations omitted). This may, under certain circumstances, include lay witness testimony which embraces an opinion about an ultimate issue in the trial. *See United States v. Goodman*, 633 F.3d 963,

4

967-969 (10th Cir. 2011) (adopting this approach to Rule 701 testimony from sister Circuits).

The government respectfully submits that the Court should not preclude witnesses from using certain nouns or adjectives to describe the hole near the pond where the defendant murdered Emily Sizemore. First, the government would elicit such testimony from individuals who made firsthand observations of the hole – its shape, size, the area surrounding it, the fact that it was not present there recently, and its proximity to the murder scene. Second, the government's eliciting why a witness would find such a hole relevant to the murder or out of the ordinary, is appropriate, as it would further tie the hole to the defendant's criminal activity, and his premeditation and intent in planning and executing the murder of two year old Emily. To place the significance of the evidence in context, it is necessary and helpful for the jury to understand why a witness would take note of this particular hole. That it appeared to be a grave dug to the dimensions of Emily Sizemore's body is that context. Finally, such testimony does not require scientific, technical, or other specialized knowledge.

Furthermore, under Federal Rules of Evidence 401, 402, and 403, the description of the hole is more probative of the defendant's *mens rea* than it is prejudicial. For these reasons, the defendant's Second Motion in Limine should be denied.

### C. Autopsy and Crime Scene Photographs Are More Probative Than Prejudicial – Response to Defendant's Third Motion in Limine (Doc. No. 52)

The defendant seeks to preclude the government from introducing and publishing images and videos depicting Emily Sizemore after she was found unconscious as unfairly

prejudicial; but courts have held to the contrary. "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant material under [Federal] Rule [of Evidence] 403." *United States v. Sides*, 944 F.2d 1554, 1563 (10th Cir. 1991) (internal quotations and citations omitted).

The admission of crime scene and autopsy photographs is both proper and probative. In *Sides*, for example, the Tenth Circuit upheld the trial judge's admission and permitted publication of several crime scene photographs of the decedent's body. *Id*. at 1562. The Court further noted that the exercise of such discretion at trial should rarely be disturbed. *Id*. The range of relevant yet unpleasant imagery permitted at trial is broad and the precedence of permitting such evidence is well-established. *See, e.g., United States v. Treas-Wilson*, 3 F.3d 1406 (10th Cir. 1993) (affirming permission to publish photographs of stab wounds and deep incision across neck of victim); *United States v. Soundingsides*, 820 F.2d 1232, 1242-43 (10th Cir. 1987) (permitting publication of autopsy photographs to "aid in illustrating the testimony of the pathologist") (internal quotations and citations omitted); *United States v. Naranjo*, 710 F.2d 1465, 1468 (10th Cir. 1983) (upholding introduction of photographs of the victim's head and torso as she appeared when investigators first responded, including gunshot wound to face and "a great deal of blood on the pillow, bedsheets, and the victim's face").

In the present case, videos depicting the recovery of Emily Sizemore's body from the pond in which the defendant was also found are inherently relevant to proving the defendant's culpability for her murder, as well as his knowledge, intent and understanding

about the nature of the crime he committed. Any additional photographs depicting Emily Sizemore are probative of the cause and manner of her death, and will also go to the defendant's knowledge and intent. While disturbing, the relevance to the charges in this case cannot be disputed. Nevertheless, the government will not seek to put in all photographs of the victim and will exercise care and discretion in selecting crime scene evidence for presentation at trial. Given that, at a minimum, the defendant's motion is premature as the government intends to provide defense counsel with an opportunity to review potential exhibits and the parties will confer on this issue before trial.

For these reasons, the government respectfully requests that the Court deny the defendant's Third Motion in Limine or delay ruling until the parties have conferred regarding trial exhibits and the defendant has supplemented this motion with specific objections to specific trial exhibits.

### D. The Medical Examiner's Report is Admissible and the Medical Examiner's Ruling That the Death was a Homicide is Appropriate Expert Testimony – Response to the Defendant's Fourth Motion in Limine (Doc. No. 53)

The defendant seeks to preclude the government from introducing the Medical Examiner's report as an exhibit or, alternatively, to preclude the portion of the report ruling Emily Sizemore's manner of death a homicide. The defendant claims the report itself is testimonial hearsay and that the opinion as to the cause of death is impermissible bolstering. The defendant is wrong on both accounts.

The Confrontation Clause prohibits the admission of testimonial hearsay. *Crawford v. Washington*, 541 U.S. 36, 42 (2004). "Generally speaking, a statement is testimonial if it's 'made with the primary purpose of creating evidence for the prosecution.'" *United*

*States v. Moya*, 748 Fed. App'x 819, 828 (10th Cir. 2018) (quoting *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017)). In *Moya*, the Tenth Circuit employed the "primary purpose test" to determine whether a particular expert report is testimonial, describing how courts should "consider both (1) the general relationship between law enforcement and the agency that completed the testing as well as (2) the particular facts and circumstances of the case, such as the passage of time between the creation of the report and the criminal charges." *Id*. Citing other circuits, *Moya* found that autopsy reports were not testimonial. *Id.* at 829.[1]

In the present case, the Medical Examiner's report does not violate the defendant's Sixth Amendment rights for two reasons. First, while the autopsy report was created following the defendant's arrest, the Oklahoma Office of the Chief Medical Examiner exists separately from law enforcement to conduct investigations into "sudden, violent, unexpected and suspicious deaths" of all kinds.[2] Second, it is anticipated that the pathologist who conducted the autopsy will testify at trial and be available for cross-examination.[3] For these reasons, the defendant's attempt to preclude the report itself is unfounded.

---

[1] In *Melendez-Diaz v. Massachusetts*, the Supreme Court found that toxicology reports prepared following arrest for drug trafficking, were by their very nature, testimonial. 557 U.S. 305 (2009). However, as Justice Kennedy pointed out in dissent, every post-*Crawford* court to consider the question, found autopsy reports to be non-testimonial. *Id*. at 335.

[2] OKLAHOMA OFFICE OF THE CHIEF MEDICAL EXAMINER, "About" at https://oklahoma.gov/ocme/about.html (2022).

[3] Even if the original pathologist were not available, another qualified expert would be permitted to review the original examination and testing conducted and be called to testify about the independent opinion he or she reached.

As to the opinion of the cause or manner of Emily Sizemore's death, it is permissible expert testimony under Federal Rule of Evidence 702 and relevant precedent. *Daubert v. Merrell Dow Pharmaceuticals, Inc.* created a two-pronged test which requires a district court to determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." 509 U.S. 579, 592 (1993).

The proposed testimony regarding Emily Sizemore meets both standards. Qualified in forensic pathology with ample experience reviewing comparable situations, the pathologist who conducted Emily Sizemore's autopsy is qualified by education, training, and experience to opine on the cause of Emily Sizemore's death and whether the defendant's actions affected it. Such testimony is so commonly accepted in district courts across the country that there is a dearth of caselaw analyzing its admissibility. Rather than a legal conclusion, the determination that Emily Sizemore's cause of death was a "homicide" is relevant to assist the jury in determining that the cause of death was not accidental and is appropriate under all other Federal Rules of Evidence.

For these reasons, the defendant's Fourth Motion in Limine should be denied.

### E. If the Defendant Proceeds with an Insanity Defense It Will Necessarily Come Up at Trial – Response to the Defendant's Fifth Motion in Limine (Doc. No. 54)

The defendant's Fifth Motion in Limine is perplexing. Certainly, the government will refrain from commenting on the defendant's letter filed February 21, 2022 (Doc. No. 49) which includes the defendant's notice of insanity defense pursuant to Federal Rules of Criminal Procedure 12(a) and 12(b). However, should the defendant proceed with said

defense at trial, then necessarily the government will address issues concerning that defense, and that experts have been procured and evaluations have been performed in response. For these reasons, the defendant's Fifth Motion in Limine should be denied.

### F. The Defendant's Behavior and Mental State Prior to the Murder is Intrinsic to an Element of the Charged Crime – Response to the Defendant's Sixth Motion in Limine (Doc. No. 55)

Next, the defendant wishes to limit the introduction of police reports and other evidence that when searching for the defendant in July 2016, police were told or believed "he was suicidal, armed or dangerous, or that his daughter was in danger." (Doc. No. 55 at p. 1). Specifically, the defendant claims that under Federal Rule of Evidence 801(c) such statements are inadmissible hearsay.

The defendant's primary case in support of his argument actually sets forth the well-settled law undercutting his arguments. Specifically, in *United States v. Hinson*, the Tenth Circuit noted that "[o]ut-of-court statements can be admitted as background for an investigation only if they provide information that is necessary to explain the government's subsequent actions, and it is not likely that the jury will 'consider the statement[s] for the truth of what was stated with significant resultant prejudice'." 585 F.3d 1328, 1336 (10th Cir. 2009) (quoting *United States v. Cass*, 127 F.3d 1218, 1223-24 (10th Cir. 1997)). In *Hinson,* the Court found inadmissible a detective's recounting that she began investigating the defendant after hearing that he was a source's primary supplier. The Court held that the information provided by the detective was admitted for its truth and not background, and thus was inappropriate. The Court went on to describe circumstances where such testimony would be appropriate, such as to explain why an officer (or other person) acted in a certain

10

way. *Id.* at 1336-1337. As such, information that has a relevant effect on the listener is entirely appropriate when admitted, not for its truth, but to provide context.

In this case, the government anticipates that officers who investigated the defendant's whereabouts and/or responded to the crime scene will testify to the reason they were looking for him. That the defendant or his daughter might be in danger is implied from the fact that the defendant's mother had not seen or heard from them in several days. Stating the reason police were looking for them is not "unnecessary," but rather completes the narrative of why law enforcement acted as they did and what led to the defendant's arrest and discovery of Emily Sizemore's body. Furthermore, such information is relevant under Rule 401 and not overly prejudicial under Rule 403. And any potential prejudice may be cured with a limiting instruction.

The defendant's motion is also premature in one respect. Much of the basis for law enforcement's belief that the defendant was suicidal, dangerous, or a danger to his daughter was based on statements from individuals who observed the defendant firsthand in the days and nights leading up to the murder of Emily Sizemore. Should any of those individuals testify at trial, then the information provided to police, which formed the basis of their reason to look for the defendant, would not be hearsay, because the declarant would testify and be subject to cross-examination. Depending on the impeachment of such a firsthand witness, prior consistent statements made to dispatch or police regarding the defendant's mental state or perceived danger may be admissible. *See* Federal Rule of Evidence 801(d)(1)(B). And, of course, such testimony from those who *did* observe the defendant's behavior and state of mind would be proper lay opinion pursuant to Federal Rule of

11

Evidence 701.[4] In this way, the defendant's motion to preclude all such testimony (as told to the police) is premature.

For these reasons, the defendant's Sixth Motion in Limine should be denied or deferred.

### G. "Victim" is an Appropriate Word at Trial – Response to the Defendant's Seventh Motion in Limine (Doc. No. 56)

The defendant also seeks to preclude witnesses from referring to the decedent, Emily Sizemore, or Police Officer Jack Suter ("J.S." in the indictment) as victims. However, under Federal Rules of Evidence 401, 402, and 403, use of the word is more probative of an individual's status than prejudicial to the defendant.

Simply because a person is accurately referred to as a "victim" does not further the government's burden to prove beyond a reasonable doubt that the defendant is, in fact, guilty of a crime. "Victim" is a common word used throughout criminal proceedings to describe individuals. The word "victim" itself is neither a legal conclusion nor an impermissible lay or expert opinion. Finally, the word "victim" is not overwhelmingly sympathetic nor overly prejudicial. Instead, it is a rather matter of fact way of describing Emily Sizemore and Officer Suter's alleged role in the offenses. Prohibiting witnesses from

---

[4] As described above, Rule 701 evidence may take many forms, including opinions as to a defendant's mental state. In *Goodman*, within the context of permitting a defendant to fully develop his insanity defense, the Tenth Circuit noted that "[t]he Federal Rules of Evidence do not…categorically prohibit lay witnesses from offering opinion testimony regarding the defendant's mental state." 633 F.3d at 968. This is true even where such testimony embraces an "ultimate issue," such as whether the defendant had the ability to appreciate his actions. *Id*. Indeed, "courts have been very liberal in admitting witness's testimony as to another's state of mind if the witness has had sufficient opportunity to observe the accused so as to draw a rational conclusion about the intent of the accused." *United States v. Hoffner*, 777 F.2d 1423, 1425 (10th Cir. 1985).

the use of certain words requires government witnesses to engage in unnecessary verbal gymnastics, which is especially needless when such commonly understood words aid the jurors' understanding without shifting the burden on the defendant. Furthermore, it is likely that given how widely used the word "victim" is, questions from either the prosecution or the defense, might elicit it.

For these reasons, the defendant's Seventh Motion in Limine should be denied.

### H. Emotional Responses are a Natural Part of Trial – Response to the Defendant's Eighth Motion in Limine (Doc. No. 57)

Finally, the defendant seeks to limit questions that may elicit emotional responses from witnesses who attempted to resuscitate Emily Sizemore after her lifeless body was pulled from a pond. Simply put, "the testimony about the nature of [a] killing might elicit some emotional response from the jury" and "Rule 403 does not protect a party from *all* prejudice, only unfair prejudice." *United States v. Nevels*, 490 F.3d 800, 805 (10th Cir. 2007) (emphasis in original) (internal quotations and citations omitted).

There is a distinction between eliciting testimony for inflammatory reasons and eliciting testimony that is, by its very nature, emotional. The government will not directly ask questions of responding officers concerning their own emotional reactions to discovering the victim in this case. However, to go farther and preclude the government from presenting evidence regarding how responders found Emily Sizemore would be profoundly prejudicial to the government's case and would unfairly limit relevant testimony. Neither Rules 401 nor 403 nor any other rule of evidence warrant the exclusion the defendant seeks.

13

For these reasons, the defendant's Eighth Motion in Limine should be denied or deferred as premature to the extent that there are portions of certain exhibits, which the defendant objects to.

### III.   CONCLUSION

The government respectfully asks the Court to grant, deny, or defer the defendant's motions *in limine* for the reasons described herein.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

DAVID L. JAFFE
Chief, Organized Crime and Gang Section

*/s/ Rebecca R. Dunnan*
Trial Attorney
U.S. Department of Justice
Organize Crime and Gang Section
1301 New York Avenue, N.W.
Washington, D.C. 20005
Phone: 202-355-5652

## CERTIFICATE OF SERVICE

  I hereby certify that on April 27, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to:

 Lisa Peebles, Counsel for Defendant

s/ Rebecca R. Dunnan
Rebecca R. Dunnan

Trial Attorney
