## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff,* | |
| **v.** | **Case No. 6:21-cr-138-RAW-JAR** |
| **DEVIN WARREN SIZEMORE,** | |
| *Defendant.* | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
## IN LIMINE AND GOVERNMENT'S MOTION TO PRECLUDE

COMES NOW the United States of America, by and through Christopher J. Wilson, United States Attorney for the Eastern District of Oklahoma, David L. Jaffe, Chief, United States Department of Justice Organized Crime and Gang Section, and Lisa K. Man and Gerald A. A. Collins, Trial Attorneys, Organized Crime and Gang Section, and respectfully responds to the Defendant's motions *in limine* filed on April 1, 2023. (Doc. No. 181).  In addition, the Government also files a motion *in limine* to preclude the Defendant's Exhibits 1-9 and 13 – 28. In support, the United States proffer the following:

I.      Defendant's Motion *in Limine*

The Court should deny the Defendant's Motion and admit Government's Exhibits 58 and 59, which are photos of the decedent's face which were taken during the autopsy. The Defendant's proffer that the Government did not previously disclose either photograph is not accurate; the Government provided 91 autopsy images (including Exhibits 58 and 59) to the Defendant on March 14, 2023, after defense counsel brought it to the United States' attention that they had not received photographs of the autopsy. On March 14, 2023, the United States sent these photographs

1

and accompanying x-rays to the Defendant. The x-rays are on the Government's Exhibit List as Exhibits Nos. 60 – 62. The Defendant has not lodged any objection to Government's Exhibits Nos. 60 – 62, which were sent over to the Defendant at the same time as these Exhibits.

Additionally, Exhibits 58 and 59 are probative and relevant to prove the decedent's cause and manner of death. For this reason, in murder cases, district courts routinely admit relevant autopsy and crime scene photographs, even particularly gruesome ones. *See, e.g., United States v. Brady*, 595 F.2d 359, 361-62 (6th Cir. 1979) (admitting photos of four victims killed by headshot wounds in pools of blood because "[w]hile the photographs were not absolutely necessary to prove this element of the crime, they were highly probative on the matter"); *United States v. Fields*, 483 F.3d 313, 354-56 (5th Cir. 2007) (admitting 32 photographs of victim's decomposing body: 19 taken at the crime scene and 13 taken in connection with the victim's autopsy); *Gov't of Virgin Islands v. Albert*, 241 F.3d 344 (3d Cir. 2001) (admitting a lengthy video of "gruesome" crime scene showing victim's bloodied body); *United States v. Treas-Wilson*, 3 F.3d 1406, 1410 (10th Cir. 1993) (autopsy and crime scene photographs, though graphic, were relevant to the determination of the defendant's state of mind); *United States v. Naranjo*, 710 F.2d 1465, 1468 (10th Cir. 1983) (admitting bloody crime scene photographs of victim who was shot in the face); *Landis v. Galarneau*, 2010 WL 458143, at *2 (E.D. Mich. Feb. 3, 2010) (finding autopsy photos of alleged drowning victim relevant and not excludable under Rule 403). In the instant matter, the Government's use of the autopsy photographs is not gratuitous. Instead, the Government seeks to only introduce **two** out of 91 photos. These images (Exhibits 58 and 59) specifically support the conclusions of the medical examiner, Dr. David Arboe, that the decedent died by drowning.  For these reasons, these images should be admissible at trial.

2

Furthermore, Exhibits 58 and 59 also serve to establish identity of the decedent. An essential fact that the United States must prove is that the decedent is in fact the person alleged in the indictment.  To do so, the Government will call various witnesses to identify photographs of the decedent prior to and after death. The United States attempted to reach a stipulation with the Defendant that the female child examined by the medical examiner was indeed the decedent but the Defendant refused to agree to this fact. Thus, Exhibit 58 and 59's are  necessary to this element of the offense and their probative value outweighs any prejudicial effect.

II.      Government's Motion *in Limine*

The United States requests that this Honorable Court preclude Defendant's Exhibits Nos. 1-9 and 13 – 28. Defendant's Exhibits Nos. 1-9 are all photos of the defendant and Emily from the same occasion. They are cumulative and used only to gain sympathy with little probative value.

The proposed admission of Defendant's Exhibit No. 13, in particular, is perplexing. This is because this exhibit consists of mental health records associated with the Defendant. On March 16, 2023, the Defendant withdrew his affirmative defense of not guilty by reason of insanity. (Doc. No. 167). Without the insanity defense, any records about the Defendant's mental state are not relevant to the jury's ultimate finding of guilt. Allowing the defense to use these records, and generate any arguments around the Defendant's mental health, would only serve to establish a backdoor argument for a mental health defense. Because this is not relevant, and would surely confuse the jury, the admission of these records should be precluded at trial.

Defendant's Exhibit 15 is a report by Allen Garoutte, the investigator for the Office of the Chief Medical Examiner. The Defendant has informed the United States that Mr. Garoutte will be testifying at trial. The report contains hearsay from Kira Kendrick and Officer Jack Suter, whom Mr. Garoutte spoke to during the course of his investigation to assist in writing the report. There

is no indication that these Ms. Kendrick intends to testify or that she has the report authored by Mr. Garoutte. Officer Suter will be testifying for the Government. Defendant's Exhibit 15 contains inadmissible hearsay and thus should be precluded by the Court.

Defendant's Exhibits 16 – 21 and 27 contains body camera footage from the officers responding to the scene who discover the Defendant and the decedent in the pond. While the Government generally does not object to the body camera footage itself, the exhibits proffered by the Defendant have words on the screen that are attributed to the speakers depicted on the footage. The United States has watched the footage and has discovered multiple discrepancies between not just the words and the footage but discrepancies between the words stating who the speakers are and who the actual speakers are in those videos. Should the exhibits be admitted, the jury should be the final finder of fact regarding what is being said in the footage. For these reasons, the Court should preclude Defendant's Exhibits 16 – 21 in their current form.

Defendant's Exhibit 22 is a dispatch call made by Christina Sam, who is on the defense's witness list and will be called to testify to the dispatch call that she made. Should she elect not to testify, the call would contain hearsay and Ms. Sam would not be subject to cross-examination by the United States about what she reported to the police. For these reasons, Defendant's Exhibit 22 should be precluded.

Defendant's Exhibit 23 is a dispatch call containing a dispatcher giving a BOLO ("be on the lookout") call to officers. The dispatcher does not have personal knowledge of what is being broadcast and her words are based on what officers have told her. The call contains hearsay within hearsay and is not admissible. Thus, Defendant's Exhibit 23 should be precluded.

Defendant's Exhibit 24 is a dispatch call containing a dispatcher giving a rundown of what is occurring when officers discover the defendant and the decedent at the pond. The dispatcher

does not have personal knowledge of what is being broadcast and her words are based on what officers have told her. The call contains hearsay within hearsay and is not admissible. Thus, Defendant's Exhibit 23 should be precluded.

Defendant's Exhibits 26 and 28 is body camera footage which contains conversations with Christina and Mark Sam on the night in question. Both Christina and Mark Sam are on the Defendant's witness list and can testify to the conversations that they had with the police officers. Defendant's Exhibits 26 and 27 contain hearsay and thus should be precluded.

## I.    CONCLUSION

The Government respectfully asks the Court to deny the Defendant's motions *in limine* to preclude Government's Exhibits 58 and 59 and to grant the Government's motions *in limine* to preclude the Defendant's Exhibits Nos. 13 – 28 for the reasons described herein.


Respectfully submitted,


CHRISTOPHER J. WILSON
United States Attorney

DAVID L. JAFFE
Chief, Organized Crime and Gang Section

_____/s/_____
Lisa K. Man
Trial Attorney
United States Department of Justice
Organized Crime and Gang Section
1301 New York Avenue, Suite 700
Washington, D.C. 20005
(202) 412-6584
Lisa.Man@usdoj.gov

_____/s/_____
Gerald A. A. Collins
Trial Attorney

United States Department of Justice
Organized Crime and Gang Section
1301 New York Avenue, Suite 700
Washington, D.C. 20005
(202) 262-6484
Gerald.A.Collins@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 2, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to:

Lisa Peebles, Counsel for Defendant

<u>s/ Lisa K. Man</u>

Lisa K. Man

Trial Attorney