## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff,* | |
| v. | **Case No. 6:21-cr-138-RAW-JAR** |
| **DEVIN WARREN SIZEMORE,** | |
| *Defendant.* | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, through Christopher J. Wilson, the United States Attorney for the Eastern District of Oklahoma, and David L. Jaffe, the Chief of the Violent Crime and Racketeering Section, U.S. Department of Justice, respectfully files this memorandum to aid this Honorable Court in its sentencing determination regarding the Defendant Devin Warren Sizemore ("SIZEMORE" or "the defendant"). On or about July 15, 2016, SIZEMORE submerged his, approximately two year old, daughter in a pond, forcing her to inhale water, and ultimately suffocating her. This abusive conduct resulted in her violent death. Pursuant to the factors set forth in 18 U.S.C. § 3553 the Government requests this Honorable Court hold SIZEMORE accountable for this conduct and sentence him to a significant sentence consisting of decades of incarceration in the Bureau of Prisons.

### FACTUAL AND PROCEDURAL SUMMARY OF THE CASE

On or about July 14, 2016, the Krebs Police Department ("KPD") was notified that SIZEMORE and his daughter ("E.S.") were missing. KPD officers and other local law enforcement agencies began searching for the two.

In the early morning hours of July 15, 2016, officers were conducting a search in an area near Krebs Lake Road in McAlester, Oklahoma. While at that location, officers heard someone

yelling and saw SIZEMORE on a nearby property. As officers called out to the defendant, he ran across the property, behind a barn, and towards a wooded area. The officers gave chase, and after getting to the backside of the barn, observed the defendant neck-deep in a dark pond.

One of the officers, ordered SIZEMORE out of the water. While standing near the shoreline, the officer looked into the water and saw a small body—later identified as E.S.—floating face down in the pond. The officer repeatedly ordered the defendant to exit the pond but he refused to comply. The officer then entered the pond where a struggle ensued between him and SIZEMORE. As SIZEMORE continued to fight with the officer, a second officer entered the pond and was able to pull the defendant away. The officers then removed the defendant from the water to the shoreline, where he continued to resist being handcuffed. Soon thereafter, officers were able to take him into custody.

As this was occurring, other officers responded to the location and observed E.S. in the pond. These officers removed E.S. from the water and attempted to perform CPR on her. Despite their efforts, E.S. was unresponsive. Officers then drove E.S. to another location where an ambulance was waiting. E.S. was then transported to the McAlester Regional Hospital Center ("MRHC"). Emergency medical staff in the ambulance and on-scene at the hospital attempted life-saving measures on her. However, these efforts were unsuccessful and she was pronounced deceased.

SIZEMORE was taken to MRHC for medical attention. He was examined by a doctor and treated for a laceration to the left side of his head, swelling to his nose, and other injuries. Following this examination and treatment, the defendant was medically cleared and taken to the Pittsburg County Jail.

Later that day, SIZEMORE was interviewed by a Special Agent with the Oklahoma State Bureau of Investigation ("OSBI"). After being read his Miranda rights, the defendant provided an audio-recorded statement. During the statement, the defendant admitted that, among other things, he put E.S. in the water, took her out, and then "revived her back" and "put her on the hill." When questioned about this, the defendant said that he held E.S. down in the water for about 30 seconds to baptize her, but "something went wrong." The defendant then said he then went to find "the horse." At a separate point in the interview, the defendant claimed he blacked out and then remembered being hit in the head. He remembered E.S. being taken to the hospital, but indicated he thought E.S. was still alive.

An autopsy was conducted on July 15, 2016, by the Medical Examiner's Office located in Tulsa, Oklahoma. An examiner ruled the cause of death as drowning and ruled the manner of death a homicide.

On May 12, 2021, a federal grand jury in the Eastern District of Oklahoma – Muskogee Division, issued a six-count indictment against SIZEMORE charging him in Count One with Murder in Indian Country, in violation of 18 U.S.C. §§ 1111(a), 1151 and 1153; in Count Two with Second Degree Murder in Indian Country, in violation of 18 U.S.C. §§ 1111(a), 1151 and 1153; in Count Three with Voluntary Manslaughter in Indian Country, in violation of 18 U.S.C. §§ 1112(a), 1151, and 1153; in Count Four with Child Abuse in Indian Country, in violation of 18 U.S.C. §§ 1151 and 1153 and 21 Okla. Stat. 843.5(A); and in Count Five with Assault Resulting in Serious Bodily Injury in Indian Country, in violation of 18 U.S.C. §§ 113(a)(6), 1151 and 1153. (ECF. No. 20).[1]

---

[1] Count Six of the Indictment charging Assault and Battery on a Police Officer in Indian Country, in violation of 18 U.S.C. §§ 13, 1151 and 1152 and 21 Okla. Stat. 649 was dismissed on the government's motion by the Court. (ECF. Nos. 80, 81).

On April 3, 2023, this matter proceeded to trial before the Honorable Judge Ronald A. White. (ECF No. 185). On April 7, 2023, a jury returned guilty verdicts against SIZEMORE on two counts of the indictment and not guilty findings on the remaining counts. (ECF No. 195). Specifically, the defendant was found guilty of Count Three: Voluntary Manslaughter in Indian Country and Count Four: Child Abuse in Indian Country. Sentencing is scheduled for **Thursday, January 25, 2024**.

The maximum sentence provided for SIZEMORE's counts of conviction are as follows: Voluntary Manslaughter in Indian Country carries a statutory maximum term of 15 years imprisonment. Child Abuse in Indian Country carries a statutory maximum term of life imprisonment.

## SENTENCING GUIDELINES RANGE

On July 31, 2023, the United States Probation Office prepared a draft Presentence Investigation Report ("PSR") for this matter. (ECF. No. 197). In response, the parties submitted proposed corrections and objections to the draft PSR (ECF Nos. 199 and 202). Subsequently, on November 9, 2023, the defense submitted a response to the Government's objection to the draft PSR. (ECF No. 202). On or about November 24, 2023, the United States Probation Office issued a final PSR. (ECF No. 207).

The final PSR calculates SIZEMORE's criminal history category as IV because the defendant had a total of eight criminal history points.[2] The Government concurs with this calculation.

The PSR also calculates SIZEMORE's base offense level for Count Three: Voluntary Manslaughter in Indian Country as 29, pursuant to U.S.S.G §2A1.3. A 2-level upward

---

[2] The defendant had seven criminal history points and an additional point was added because the instant offense was committed while he was under court ordered supervision.

adjustment applies, pursuant to U.S.S.G. §3A1.l(b)(l), because the defendant knew or should have known that a victim of the offense was a vulnerable victim. The total offense level for Count Three is 31. The Government concurs with this calculation as well.

Based upon a total offense level of 31 and a criminal history category of IV, the guideline imprisonment range for Count Three is 151 months to 188 months. However, because Voluntary Manslaughter carries a 15 year statutory maximum sentence, the revised guideline range of imprisonment for this offense is 151 months to 180 months.

As presented at trial, both SIZEMORE and E.S. are Native Americans, and the offense took place in "Indian Country." Under *McGirt v. Oklahoma,* 140 S. Ct. 2452 (2020) and its legal progeny, this means that the federal government had jurisdiction over the defendant's crimes. Yet, the federal government has no standard child abuse statute. Instead, the federal government is left to assimilate Oklahoma law, which pursuant to 21 Okla. Stat. 843.5(A) carries a maximum term of life imprisonment, and analogize the guidelines.

To identify an appropriate guideline for Count Four: Child Abuse in Indian County, U.S.S.G. §1B1.2(a) directs that the most analogous guideline shall be utilized when statutory provisions are not listed in the Statutory Index (Appendix A) of the United States Sentencing Guideline Manual. However, a cross-reference to U.S.S.G. §2X5.1 applies and states that "[I]f the offense is a felony for which no guideline expressly has been promulgated, apply the most analogous offense guideline." *Id*. This section further states "[I]f there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. §3553 shall control, except that any guidelines and policy statements that can be applied meaningfully in the absence of a Chapter Two offense guideline shall remain applicable." *See* U.S.S.G. §2X5.1.

Therefore, the guideline sentence for Count Four is up to life imprisonment in accordance with the statutory provisions of 18 U.S.C. §§ 1151 and 1152, and 21 Okla. Stat. 843.5(A).

The offenses in Count Three and Count Four do not group, pursuant to U.S.S.G. §3D1.2(d), because all offenses in Chapter Two, Part A (except U.S.S.G. §2A3.5) are specifically excluded from the operation of this subsection.

## 18 U.S.C. § 3553(a) FACTORS

In determining the appropriate sentence, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)

For the reasons stated below, these factors all weigh in favor of the Court imposing a sentence consisting of decades of incarceration for SIZEMORE.

### A.    Nature and Circumstances of the Offense

There is no greater offense than taking the life of another human being. Based on the evidence proven at trial, SIZEMORE committed such a crime. While the death of any person can

be egregious, the Government submits that the killing of E.S. is aggravated by certain facts and circumstances related to this offense.

First and foremost, E.S. was SIZEMORE's own two year old daughter. Being at such a young age, E.S. was truly a vulnerable victim. She lacked the mental capacity or physical stature to adequately care for herself; instead, she relied upon adults for her every need. As such, E.S. was utterly defenseless to any potential mistreatment, let alone what the defendant subjected her to in the moments leading to her death. The parent of a child is expected to be a provider, nurturer, and even a protector. As a result, it is incomprehensible that any parent would put their child in harm's way, let alone kill them. Yet SIZEMORE in-fact did so, and in a cruel and callous manner.

Additionally, E.S. suffered a brutal and horrifying death. As described by responding officers and depicted in the body worn camera videos displayed at trial, E.S. was found face down in a dark murky pond. Once pulled from the water, she was not breathing and displayed no signs of life. As explained by the medical examiner, E.S. likely struggled and gasped for air while under the water, convulsing violently as fluid filled her lungs until she lost consciousness, and she choked to death. Despite the numerous efforts of responding officers and later attending physicians, she could not be resuscitated. This type of death is extremely painful and terrifying for adults. One can only imagine the pain, fear, and horror E.S. suffered through in her final moments.

Furthermore, the killing of E.S. was no accident. To the contrary, SIZEMORE willfully and maliciously engaged in abusive conduct resulting in her death. SIZEMORE, as heard through his own words at trial and other presented evidence, took deliberate steps to accomplish

this crime. In particular, he took E.S. to this secluded location, trespassed onto the property, and kept her there despite knowing she was supposed to have been returned home. While there, he kept E.S. inside a barn that was barely hospitable living quarters for animals, let alone for a minor child. During the middle of the night, he contemplated and then thought it would be a good idea to put his daughter in the water. After making this specific decision, he took E.S. from the top level of the barn, exited the structure, and walked through the dark to the pond. Once at the pond, he submerged E.S. under water and held her head there for – as based on his description – possibly "30 seconds," but definitely long enough to kill her. Without question, SIZEMORE would have felt her struggle to breathe as he kept her under the water – but continued to do so. SIZEMORE made each of these decisions and by deciding to continue with his actions, he caused the death of E.S.

While SIZEMORE will argue that his actions were the result of some diminished mental capacity, this argument has been roundly rejected. Since his commission of this crime, the defendant has been evaluated several times at the direction of the courts. In fact, in June 2022, the defendant was evaluated at the direction of this Court by Bureau of Prisons psychologist, Dr Samuel Browning. During this evaluation, Dr. Browning determined that certain symptoms either explained or displayed by the defendant were likely attributable to withdrawal from controlled substances and even malingering (an exaggeration or feigning of illness). More importantly though, Browning found that it was unlikely that the defendant suffered from a mental disease or defect that impaired his overall ability to appreciate the nature and quality, or wrongfulness of his criminal behavior. Browning was not the only medical practitioner to come to this type of finding. Equally instructive is that the Court made similar findings when considering a diminished capacity argument posited by the defendant's motion to suppress

statement. On or about September 22, 2022, the parties appeared before Magistrate Judge Jason A. Robertson. (ECF No. 107). After reviewing the defendant's interactions with and statement to the OSBI Special Agent hours after the incident, the Court found that there was "not objective evidence that [the] Defendant was suffering from a mental disorder or incapacity such that he did not know or could not comprehend…" the questions posed or his waiver of rights. (*See* ECF. No 130, pages 11 – 12). As a result, the diminished mental capacity argument has no merit.

With these guilty findings, SIZEMORE has now been convicted of some of the most serious offenses in the U.S. Code based on his conduct. His sentence in this case should be commensurate with the serious and violent actions for which he was responsible. As such, this factor must weigh heavily in the Court's sentencing determination.

### B.    History and Characteristics of the Defendant

SIZEMORE is approximately 28 years old with three prior convictions identified in the final PSR. While the amount of convictions is not substantial, they are still disturbing to the Government. As stated above, SIZEMORE does not suffer from some sort of diminished capacity. Rather, based on the defendant's criminal history, he has a background of intentional behavior, escalating offenses, non-compliance while under supervision, and domestic violence that should be of concern to the Court.

Per paragraph 37 of the final PSR, the defendant was arrested on March 11, 2014, for the theft of a motorcycle. It is alleged that after he was transported to the Pittsburg County Jail, he was found in possession of controlled substances. Based on this conduct he was charged and pled guilty (on March 28, 2014) to theft and drug related offenses. He was sentenced to six years of incarceration deferred with two years under supervision.

9

The instant matter is not the first time that SIZEMORE has committed a violent act against a person with whom he had an intimate or familial relationship. Per paragraph 38 of the final PSR, the defendant was arrested on April 17, 2016, for Domestic Assault and Battery in the Presence of a Minor Child. It was alleged that he grabbed and struck the victim – E.S.'s mother and his then girlfriend – in the head while E.S. was present. Responding officers noted that the injuries to the victim were "clearly visible" and the defendant acknowledged his conduct. At paragraph 39 of the final PSR, the defendant was arrested just a few weeks later on May 1, 2016, for Domestic Abuse – Assault and Battery. It was alleged that he tackled and punched his stepfather several times in the face. When questioned about the incident, the defendant once again admitted to his conduct. On March 16, 2017, he pled *nolo contendere* to these two domestic assault and battery cases. For both of those matters, he was sentenced to one year of imprisonment to run concurrent to each other. At the time that these two domestic assault offenses occurred, SIZEMORE was under the supervision of the court for the theft and drug related offenses. Merely three and half months after his first arrest for these two domestic violence offenses, the defendant was arrested for his willful and malicious conduct that resulted in the killing of E.S.

In addition to these convictions, the defendant has at least one other reported incident of family violence. As reported in paragraph 46 of the final PSR, the defendant was arrested on March 11, 2014, for the offense of Assault with a Dangerous Weapon. It is alleged that on February 12, 2014, the defendant assaulted his mother during an argument with a butcher's knife. While this case was ultimately dismissed on March 28, 2014, the Government believes that based on the defendant's other history with intimate or domestic violence, this is relevant conduct for the Court to consider.

Based on this information, SIZEMORE has a disturbing criminal history of domestic violence related incidents, as well as a lack of respect for criminal justice and court-ordered supervision. Therefore, this factor must weigh heavily in the Court's sentencing determination as well.

**C.      The Need to Achieve Sentencing Goals (Accountability, Deterrence, Promoting Respect for the Law, and Rehabilitation)**

A significant period of incarceration – one consisting of decades of imprisonment – for SIZEMORE will achieve the essential goals of sentencing. A sentence of that length reflects the magnitude of the offenses for which the defendant was convicted and will provide a just punishment for his offenses. A sentence of that length will also serve as specific deterrence to the defendant, who has previously received lenient sentences and continued to engage in acts of domestic related violence. A sentence of that length will also serve the ends of general deterrence because it will send a message to other violent offenders that engaging in conduct of this sort will lead to a substantial prison sentence. During his incarceration, the Bureau of Prisons will provide the defendant with needed educational and vocational training.

**D.      The U.S. Sentencing Guidelines and Sentencing Policy Statements**

The guidelines sentence for SIZEMORE in this case is 151 to 180 months imprisonment for Voluntary Manslaughter in Indian Country, and pursuant to the 3553(a) factors up to life imprisonment for Child Abuse in Indian Country. Imposing a significant sentence consisting of decades of imprisonment would be precisely what is called for in this case and would be consistent with an evenhanded application of the Sentencing Guidelines and of relevant Sentencing Policy Statements.

### E.     The Need to Avoid Unwarranted Sentencing Disparities

The sentence in this case should also avoid unwarranted sentencing disparities. Imposing a significant sentence consisting of decades of imprisonment would avoid unwarranted disparities among defendants with similar records who have been sentenced for similar offenses under similar circumstances.

### F.     The Overriding Need for a Just Punishment

The sentence imposed should reflect the overall need to provide a just punishment for SIZEMORE in this case. To that end, the sentence ought to reflect the gravity of his criminal conduct, including the killing of his daughter, two year old E.S.; the abusive, brutal, and violent manner in which E.S. was killed; his criminal history, which includes other assaultive and domestic violence related conduct, and demonstrates a high risk of recidivism; and the need to provide specific and general deterrence.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court sentence SIZEMORE to decades in prison. Such a sentence would be appropriate in this case under the factors set forth at 18 U.S.C. § 3553(a).

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

DAVID L. JAFFE
Chief, Violent Crime and
Racketeering Section
United States Department of Justice

_____/s/_____
Gerald A. A. Collins
Trial Attorney
United States Department of Justice

1301 New York Avenue, Suite 700
Washington, D.C. 20005
(202) 262-6484
Gerald.A.Collins@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January <u>7</u>, 2023, I electronically served one copy of the government's Memorandum in Aid of Sentencing with the Clerk of the Court by using the CM/ECF system, which will automatically send notification to counsel for the above-referenced defendants.

Respectfully submitted,

By:    <u>*/s/ Gerald A.A. Collins*</u>
        GERALD A.A. COLLINS
        Trial Attorney, Violent Crime and Racketeering Section
        United States Department of Justice