UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

---

UNITED STATES OF AMERICA,

   -v-                                               CASE NO.  21-CR-138 (RAW)

DEVIN WARREN SIZEMORE,
                        Defendant.

---

# SUPPLEMENTAL SENTENCING MEMORANDUM

Dated: January 19, 2024                      Respectfully submitted,

                                                                 Lisa A. Peebles
                                                                  Federal Public Defender
                                                                  Bar Roll No. 507041
                                                                Clinton Exchange, 3rd Floor
                                                                4 Clinton Square
                                                                Syracuse, New York 13202
                                                                (315) 701-0080

Please accept this supplemental sentencing memorandum to address several points raised in the government's sentencing memorandum.

First, in support of its request for a sentence requiring Devin Sizemore to serve several decades in the Bureau of Prisons, the government relies on inflammatory speculation and outright false claims. While Emily's death was undoubtedly tragic, there was no evidence that she "suffered a brutal and horrifying death," "likely struggled," "convuls[ed] violently," suffered through "pain, fear, and horror," or that Devin "would have felt her struggle to breathe as he kept her under the water." Dkt. No. 209, at 7-8. What is more, the government falsely clams that Emily "displayed no signs of life," when two of the responding officers, Richard Bedford and Colby Barnett, clearly reported feeling Emily's pulse shortly after pulling her from the pond. The government's claims about the property are also misleading. Contrary to the government's suggestion, the property was located less than one mile from the center of Krebs. Devin, who had previously mowed the grass, knew that a barn was on the property that provided more than adequate temporary summer shelter.

Second, the government incorrectly claims that Devin's diminished mental capacity has been "roundly rejected." Whatever weight is otherwise given to the limited evaluation conducted by a Bureau of Prisons psychologist, no relevant finding was made as to Devin's diminished mental capacity. Instead, Dr. Browning concluded, without speaking with a single collateral source, that Devin was not legally insane. That conclusion is irrelevant now. The same goes for the finding

1

that Devin was competent to waive his *Miranda* rights.  Further in this connection, the government's reliance on these two sources – neither of which bear on the question of whether Devin's history of mental health mitigates his sentence – ignores the statements of former Officer Suter, who admitted that Devin was not in his right mind; Special Agent Jones, who acknowledged that Devin was "out there" during the interrogation and admitted to his parents that competency would be an issue; Devin's mother, Christina Sam, who initially involved law enforcement because Devin was not acting right and talking out of his head; and Doris Ayers, Ronald Williams, Gaila Bass, Sharon Wood, Tina Lanham, and James Barnes, who, among others, all expressed concern for Devin's mental wellness.  This is all to say nothing of Dr. Beatty, who diagnosed Devin not longer after his arrest with major depressive disorder with psychotic features and bipolar disorder, and Jeanne Russell and Matthew Clem, who measured Devin's below average intelligence.

Third, the government's reliance on Devin's prior criminal conduct is taken out of context.  Each one of the offenses cited by the government was committed when Devin was between the ages of 19 and 21, when he was an emerging adult with immature impulse and risk-taking control.  *See Commonwealth v. Mattis*, __N.E.3d__, 2024 WL 118188 (2024) (detailing evidence demonstrating how emerging adults are neurologically similar to juveniles with respect to impulse control, risk-taking, peer influence, and capacity for change).  Moreover, Devin was raised in a emotionally and physically abusive household by parents struggling with addition.  Finally, many of these offenses arose out of Devin's chemical dependency,

which he has already begun to manage and will continue to do so upon release. As Devin's relatively clean disciplinary history and eagerness for programming while detained since 2016 demonstrate, Devin is not the same young man. He has committed to rehabilitation and intends to make the most of his future opportunities.

Finally, the government argues that its sentencing request "would avoid unwarranted disparities among defendants with similar records who have been sentenced for similar offenses under similar circumstances." Dkt. No. 209, at 12. But the government has provided no evidence or statistics to support its claims. The statutory sentence for the only federal offense of which Devin was convicted carries a maximum of 15 years. The government offers no good reason why a generic, catchall state offense (child abuse) that applies to the same alleged facts could be used to go above the otherwise applicable 15-year federal maximum sentence.

Based on the foregoing considerations, as well as those set forth in Devin's opening sentencing memorandum, this Court should impose a sentence of time served to be followed by a term of supervised release of no more than five years.

Respectfully submitted,

Lisa A. Peebles
Federal Public Defender
Bar Roll No. 507041
Clinton Exchange, 3rd Floor
4 Clinton Square
Syracuse, New York 13202
(315) 701-0080